IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| STEVEN DICKSON, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | No. MO:21-CV-009-DC |
| | § | |
| THE BOSWORTH COMPANY, LTD., | § | |
| and CHARLES WITTE, | § | |
|     *Defendants*. | § | |

### ORDER

BEFORE THE COURT is Plaintiff Steven Dickson's ("Plaintiff") Motion to Strike Defendants The Bosworth Company, Ltd. ("Bosworth") and Charles Witte's (collectively, "Defendants") Joint Expert Witness Designation of W. Clark Lea (Doc. 20), Defendants' Response (Doc. 22), and Plaintiff's Reply (Doc. 25). After due consideration, Plaintiff's Motion is **GRANTED** in part and **DENIED** in part (Doc. 20).

### I.   BACKGROUND

Plaintiff sued Defendants for racial discrimination on January 1, 2021. (Doc. 1). Defendants filed a Joint Designation of Expert Witnesses on September 3, 2021. (Doc. 19). According to the Court's Scheduling Order (Doc. 13), an objection to the reliability of an expert's proposed testimony under Federal Rule of Evidence 702 is due within thirty (30) days of receipt of the written report of the expert's proposed testimony or within thirty (30) days of the expert's deposition, whichever is later. Mr. Lea's report was provided on September 3, 2021, contemporaneously with the filing of Defendants' Joint Designation of Expert Witnesses (Doc. 19). Plaintiff filed his Motion to Strike on October 6, 2021, thirty-two (32) days after receipt of the written report of the expert's proposed testimony. On October 18, 2021, Plaintiff filed an Unopposed Motion for Leave to File Out of Time Plaintiff's Motion to Strike requesting the

Court deem Plaintiff's Motion to Strike Defendants' expert witness designation as timely filed (Doc. 23), which the Court granted on October 19, 2021. Accordingly, the timeliness issue is moot.

Defendants designate Mr. Lea as an expert investigator to render an opinion on whether Bosworth exercised reasonable care to prevent and correct promptly any harassing and/or discriminatory behavior and whether Plaintiff failed to take advantage of any preventative or corrective opportunities provided by Bosworth. Mr. Lea is designated as an expert on Bosworth's investigation of Plaintiff's complaints of discrimination, not as an expert on liability. Plaintiff moves to strike the designation on the basis that Mr. Lea is a practicing an attorney. (Doc. 20).

Mr. Lea obtained a Master of Business Administration from Southern Methodist University and Juris Doctor from Baylor Law School. Mr. Lea joined Cotton Bledsoe Tighe & Dawson, PC after earning his law degree and spent thirty (30) years representing clients in corporate, oil and gas, trust, employment, and litigation matters, including investigation of employment matters. (Doc. 21-1 at 9). Mr. Lea based his understanding of Plaintiff's claims on his lawyer's pre-suit demand letter, the Complaint, interviews of Bosworth employees on matters raised by Plaintiff, and Plaintiff's discovery responses including secret recordings of conversations with Bosworth employees. (Doc. 21-1 at 3).

Plaintiff argues that the Court should strike Mr. Lea's testimony because it is the job of the Court and the jury—not an expert—to determine liability based on the evidence presented. (Doc. 20). Plaintiff further contends Mr. Lea's opinion should be excluded because he is testifying as an attorney and his testimony does not present scientific or statistical expertise.

(*Id.*).  Plaintiff alleges Mr. Lea's opinions are hearsay and amount to an impermissible expert fact witness.  (*Id.*).

Defendants argue Mr. Lea's opinions are relevant and reliable.  Bosworth retained Mr. Lea to conduct an independent investigation of Plaintiff's complaints of discrimination. According to Mr. Lea's report, "Prior to Bosworth engaging me to conduct an investigation into Mr. Dickson's complaints, I explained that I had no control over the results of the investigation, that I would go where the facts led me and that I had absolutely no way of predicting whether my conclusions would be favorable or unfavorable to Bosworth and/or Witte."  (Doc. 21-1 at 3).

Defendants further contend Mr. Lea's testimony is a proper subject for expert testimony. Bosworth alleges the *Burlington/Faragher* defense in that it exercised reasonable care to prevent and correct promptly any harassing and/or discriminatory behavior and Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities.  *See Burlington Inds., Inc. v. Ellerth,* 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). (Doc. 9 ¶ 33).  Defendants assert the Court may guard against Mr. Lea rendering an impermissible legal conclusion through tailoring the questioning at trial and limiting his testimony instead of striking his testimony completely.  (Doc. 22).

Finally, Defendants claim Mr. Lea's testimony will be helpful to the jury.  Defendants argue Mr. Lea should be allowed to testify regarding his conclusions derived from his independent investigation, and specifically, Mr. Lea's opinion that his investigation failed to reveal any basis on which a reasonable person could make the conclusion that Defendants treated Plaintiff differently than other employees because of his race.  (Doc. 21-1 at 2).

## II.   LEGAL STANDARD

The admissibility of expert evidence is a procedural issue governed by Federal Rule of Evidence 702 and *Daubert*. *See Wells v. SmithKline Beechum Corp.,* No. A-06-CA-126-LY, 2009 WL 564303, at *7 (W.D. Tex. Feb. 18, 2009), *aff'd,* 601 F.3d 375 (5th Cir. 2010) (citing *Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814, 821 (W.D. Tex. 2005)); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Federal Rule of Evidence 702 sets forth the requirements that must be satisfied to enable a witness designated as an expert to testify to his or her opinions. An expert may testify in the form of an opinion or otherwise if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702.

The Supreme Court of the United States in *Daubert* directed the district courts to use Rule 702 to function as gatekeepers when evaluating the admissibility of scientific evidence and determining whether expert testimony should be presented to the jury. *See Daubert*, 509 U.S. at 591–93. The proponent of the expert testimony "must prove by a preponderance of the evidence that the testimony is reliable." *Pittman v. Gen. Nutrition Corp.*, No. CIV.A. H-04-3174, 2007 WL 951638, at *3 (S.D. Tex. Mar. 28, 2007) (citing *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702." *Id*. at * 3 (quoting *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000), *cert. denied*, 531 U.S. 812 (2000)).

The Supreme Court extended this gatekeeping function from the admissibility of scientific evidence to include the admissibility of all expert testimony. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 151-2 (1999). In *Kumho Tire*, the Supreme Court outlined the factors for admitting expert testimony as the following: (1) the expert is qualified; (2) the evidence is relevant to an issue in the case; and (3) the testimony is reliable. *Kumho Tire,* 526 U.S. at 153–54; *Daubert*, 509 U.S. at 589, 590–91 (in order to be admissible, expert testimony must not only be relevant, but reliable).

In deciding whether to admit exclude expert testimony, the Supreme Court has offered a non-exclusive list of factors for courts to use in evaluating the validity or reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Daubert*, at 593–94; *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). These factors are not necessarily limited to scientific evidence and may be applicable to testimony offered by non-scientific experts, depending on the circumstances of the case. *Kumho Tire,* 526 U.S. at 150. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Metzler v. XPO Logistics, Inc.*, No. 4:13-CV-278, 2014 WL 7146108, at *1–2 (E.D. Tex. Dec. 15, 2014) (quoting *Daubert*, 509 U.S. at 594); *see also Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997) (*Daubert* analysis for both scientific and non-scientific experts focuses on the reasoning or methodology, not the ultimate conclusion). The *Daubert* factors are not "a definitive checklist or test" and the *Daubert* framework is a "flexible one." *Id*.

at *2; *Daubert*, 509 U.S. at 593–94; *Dearmond v. Wal-Mart La. LLC*, 335 F. App'x 442, 445 (5th Cir. 2009) (unpublished).

The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire,* 526 U.S. at 150–51. Often courts review the expert reports before ordering exclusion of expert testimony for lack of reliability, relevance, or qualification. *Sparling v. Doyle*, No. EP-13-CV-323-DCG, 2015 WL 4528759, at *26 (W.D. Tex. July 27, 2015); *Charles v. Sanchez*, 2015 WL 808417 at *10 (W.D. Tex. Feb. 24, 2015); *Little v. Tech. Specialty Products, LLC*, 940 F. Supp. 2d 460, 468 (E.D. Tex. 2013).

In any event, the Supreme Court has not set forth a specific degree of reliability required or the manner in which the district courts must determine reliability of expert testimony. *Kumho*, 526 U.S. at 152. The Court has "considerable leeway deciding in a particular case how to go about determining whether particular expert testimony is reliable . . . and the same kind of latitude in deciding how to test an expert's reliability." *Id*. Not every guidepost outlined in *Daubert* will necessarily apply. *See Watkins*, 121 F.3d at 988–89. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *Metzler*, 2014 WL 7146108 at *2 (citing *St. Martin v. Mobil Exploration & Producing U.S., Inc*., 224 F.3d 402, 405 (5th Cir. 2000)). A trial court, therefore, has wide latitude in deciding whether to exclude an expert's testimony. *See Kumho Tire*, 526 U.S. at 152. Moreover, the rejection of expert testimony is the exception rather than the rule. *Eagle Oil & Gas Co., v. Travelers Prop. Cas. Co. of Am.*, No. 7:12-cv-00133-O, 2014 WL 3744976, at *3 (N.D. Tex. July 30, 2014) (quoting Fed. R. Evid. 702, adv. Comm. Notes (2000)). The trial court's gatekeeper role is not intended to serve as a replacement for the adversary system. *Id*.

### III.  DISCUSSION

First, Plaintiff contends Mr. Lea is not qualified to testify as an expert on workplace legal matters including workplace investigations simply because he has practiced employment law. The Court disagrees and finds Mr. Lea is qualified in the field of employment law, which encompasses opinions regarding whether Bosworth exercised reasonable care in this case. Accordingly, the Court turns to whether Mr. Lea's opinion is reliable and admissible to the extent that it will permissibly aid the trier of fact.

Other courts have allowed experts to testify on issues related to the quality or propriety of a defendant's employment practices. *See, e.g., Gonzalez v. Conoco, Inc.,* No. H-98-3109, 1999 WL 1043756, at *3 (S.D. Tex. Oct. 15, 1999); *Richards v. Lufkin Indus., Inc.*, No. 9:14-CV-136, 2017 WL 4320700, at *4 (E.D. Tex. Sept. 28, 2017). Such expert opinions are not admissible, however, concerning the state of mind or motives of the defendant's officers and agents because issues of motive or intent must be assessed by the jury. *Gonzalez*, 1999 WL 1043756, at *3.

There is also no dispute that expert testimony on legal questions is generally impermissible. *Id.*; *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1998). Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the Court. *Little*, 940 F. Supp. 2d at 467–68 (E.D. Tex. Apr. 15, 2013) (citing *Fisher v. Halliburton*, No. H05–1731, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009); *Goodman v. Harris Cty.*., 571 F.3d 388, 399 (5th Cir. 2009)). Allowing an expert to give an opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant. *Id.* at 468 (quoting *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)). In addition, an expert should not be permitted to give opinions that reiterate what the lawyers offer in argument. *Id.*; *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

The Court notes that Federal Rule of Evidence 704(a) provides that "an opinion is not objectionable just because it embraces an ultimate issue." However, Rule 704 does not open the door to all opinions. *Owen*, 698 F.2d at 240. The rule is not intended to allow expert witnesses to give legal conclusions or tell the jury what result to reach. *Little*, 940 F. Supp. 2d at 468 (citing *Owen*, 698 F.2d at 240).

After a review of Mr. Lea's expert report, the Court finds that a large part of his opinion does indeed assert impermissible legal analysis and conclusions. Mr. Lea opines as follows:

- "My investigation failed to reveal any basis on which a reasonable person could conclude that Mr. Witte, a Bosworth manager, treated Mr. Dickson differently than other employees because of his race." (Doc. 21-1 at 1).

- "Poor judgment, especially when occurring infrequently and in isolated events, does not, however, provide evidence of racism." (*Id*. at 2).

- "Nowhere do the facts support a conclusion that Mr. Dixon was discriminated against because he was black." (*Id*.).

- "More importantly, even if everyone (including Mr. Witte and Mr. Dickson) is biased against a particular race, this provides no evidence that either of them is biased against black people." (*Id*. at 3).

- "Put simply, Mr. Dickson's claim is not credible, especially when he must show that he was denied an opportunity because of his race and not simply that race was a consideration." (*Id*. at 4).

- "In order to determine whether an employee was similarly situated, I would need to compare the disciplinary history, performance records, tenure, reporting track, testing results/circumstances, timing of events, and other relevant information in order to determine if the identified employee is, indeed, similarly situated. Because I am not aware that such a person exists and Mr. Dickson has not identified such a person, I conclude that there is no basis or the claim." (*Id*. at 6).

- "After interviewing each relevant, witness and reviewing the relevant documents, I do not find support for any claim that Bosworth terminated Mr. Dickson's employment because he was black." (*Id*.).

Much of Mr. Lea's opinion involves analyzing the facts of the case and reaching the conclusion that Bosworth's actions were adequate and consistent with standards of reasonable

care. These types of conclusions invade upon the purview of the court and direct the jury what result to reach, both of which are improper. *See Pittman*, 2007 WL 951638, at *3 (citing *United States v. Willey*, 57 F.3d 1374, 1389 (5th Cir. 1995)). Mr. Lea's opinions which state legal conclusions and findings about the appropriateness or reasonableness of Bosworth's actions based on the evidence in this case shall be **EXCLUDED**.

The Court does find, however, that a portion of Mr. Lea's expert testimony is admissible. Mr. Lea may testify as to Bosworth's policies, procedures, and practices, and training received by employees at Bosworth as compared to prevailing standards or best practices. This line of analysis does not draw legal conclusions specific to the facts of the case but rather offers opinions on a specialized area of employment practices outside of the common knowledge of a juror. As stated above, courts have permitted experts to testify on the quality of a company's policies, procedures, and employee management and have allowed opinions grounded in personnel expertise which would assist the jury's determination.

Accordingly, Plaintiff's Motion to Strike is **GRANTED** in part and **DENIED** in part. (Doc. 20). In sum, Mr. Lea may testify about Bosworth's policies, procedures, and practices and training of Bosworth's employees as compared to prevailing standards or best practices. Any opinion stating legal conclusions and/or factual determinations drawn from the evidence in this case (as more specifically described above) shall be **STRICKEN**.

## IV. CONCLUSION

The Court therefore **ORDERS** Plaintiff's Motion to Strike is hereby **GRANTED** in part and **DENIED** in part as explained above. (Doc. 20).

It is so **ORDERED**.

SIGNED this 13th day of May, 2022.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE